UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY PATRICIA HAAS, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] <br><br> Defendant. | CASE NO. 12-cv-05594 RBL-JRC <br><br> REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT <br><br> Noting Date: August 30, 2013 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 11, 15, 16).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

After considering and reviewing the record, the Court finds that the ALJ's failure to credit the opinions from plaintiff's doctors on the basis that plaintiff was providing to her doctors inconsistent information, among other reasons, is based on substantial evidence in the record as a whole. Plaintiff has not challenged the adverse credibility finding by the ALJ and the Court concludes that the ALJ's findings regarding plaintiff's credibility are supported by clear and convincing reasons.

For these reasons and based on the relevant record, the Court concludes that this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, MARY PATRICIA HAAS, was born in June, 1962 and was 46 years old on the application date of November 13, 2008 (*see* Tr. 118). Plaintiff's treatment record indicates that she left high school in the 11th grade and never received her GED (*see* Tr. 423). She indicated that she was "in specialized curriculum because she got into trouble and was failing everything" (*see id.*). Plaintiff has no relevant past work history (Tr. 34-35).

Plaintiff has at least the severe impairments of alcoholic pancreatitis, hepatitis C, remote collarbone fracture, and alcohol dependence disorder (20 CFR 416.920(c)) (*see* Tr. 12).

At the time of the hearing, plaintiff was living with her sister and brother-in-law (Tr. 36).

PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act in November, 2008[2] (*see* Tr. 10, 118-20). The application was denied initially and following reconsideration in September and December of 2009 respectively (Tr. 51-54, 62-71). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on January 5, 2011 (*see* Tr. 31-43). On February 4, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 10-30).

On May 9, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on July 6, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on September 24, 2012 (*see* ECF Nos. 8-9).

In plaintiff's Opening Brief, plaintiff raises the following specific issue: Whether or not the ALJ erred in finding no severe mental health impairment at step 2 of the sequential evaluation process (*see* ECF No. 16, p. 1).

---

[2] Plaintiff filed an earlier application on May 7, 2007, however she does not appear to have appealed the denial at the initial level of this 2007 application (*see* Tr. 47-50, 114-17).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

**Whether or not the Administrative Law Judge erred in finding no severe mental health impairment at step two of the sequential evaluation process.**

Here, the ALJ concluded that plaintiff did not suffer from severe mental impairments such as anxiety or depression (*see* Tr. 12). The ALJ found that plaintiff suffered from only the severe impairments of alcoholic pancreatitis, hepatitis C, remote collarbone fracture, and alcohol dependence disorder (*see* Tr. 12). Plaintiff claims that the barrier for the finding of severe impairments at step two is minimal and the ALJ's failure to credit findings from six doctors in order to find no additional severe impairments is not supported by substantial evidence in the record as a whole. However, the Court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record as a whole for the failure to credit the doctors' opinions, as discussed further below. In addition, the state agency medical consultant, whose opinion was credited by the ALJ, contradicted the opinions from plaintiff's doctors and opined that plaintiff did not suffer from an anxiety-related or affective disorder and suffered only from alcoholism, substance abuse and prescription drug abuse (*see* Tr. 16, 429, 432, 437; *see also* Tr. 429-42).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example,

"walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," when the disability evaluation process ends at step two. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009) (unpublished opinion). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful

activity." *Bowen, supra*, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905,, 416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)).

The ALJ credited the opinion of the state agency medical consultant, who contradicted the opinions of plaintiff's doctors. If a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

**1. The ALJ provided multiple reasons supported by substantial evidence in the record for rejecting medical opinions.**

a. Inconsistent statements about whether or not plaintiff suffered from any mental health impairments and plaintiff's failure to pursue treatment

In one of plaintiff's Social Security disability report forms, in the section for remarks, plaintiff included optional additional information (*see* Tr. 139). This additional information began with the sentences: "I have never been treated for my mental health. I

am doing fine mentally" (*id.*). Although this additional information was provided as part of an earlier Social Security Application in May, 2007, and was provided before her November, 2008 application, she provided this additional information after her alleged date of disability onset of October 14, 2005 (*see* Tr. 118). In her similar subsequent Social Security disability report form (Form SSA-3368), she did not include this information as additional information in the Remarks section (*see* Tr. 172), but she also did not indicate, as noted by the ALJ, that she had any mental health illnesses or conditions (*see* Tr. 15; *see also* Tr. 165).

When being evaluated by Dr. Janis L. Lewis, Ph.D., plaintiff indicated that she "has refused" counseling (*see* Tr. 444).

The Court concludes that the ALJ's reliance on plaintiff's refusal of mental health counseling and reliance on plaintiff's insistence previously that she was "doing fine mentally" to reject doctors' opinions and support the finding that plaintiff's depression and anxiety-related impairments were not severe is supported by substantial evidence in the record as a whole.

      b.  Inconsistent statements to her doctors

The ALJ noted that plaintiff told Dr. Lewis on September 2, 2009 that she hardly drinks alcohol and that she was last intoxicated seven months prior to the examination (*i.e.*, February, 2009) (*see* Tr. 15 (*citing* Tr. 445)). Dr. Lewis also noted that plaintiff "was trying to conceal drug history but brother-in-law spoke for her and she muttered under her breath 'why did you have to go and tell her that?'" (*see* Tr. 448). Despite plaintiff's report to Dr. Lewis that she last was intoxicated approximately February, 2009,

as noted by the ALJ, plaintiff reportedly was drinking four Mike's Hard Lemonades a week in June, 2009 (*see* Tr. 350). The ALJ also noted that while plaintiff reported drinking four Mike's Hard Lemonades a week, her brother-in-law told the doctor that it likely was twice that amount (*see* Tr. 15 (*citing* Tr. 350)). For these reasons and based on the relevant record, the Court concludes that the ALJ's finding that plaintiff provided inconsistent statements to her doctors is based on substantial evidence in the record as a whole.

Other reasons offered by the ALJ support his decision, however, plaintiff questions whether or not the ALJ actually was relying on these reasons for discounting the medical opinions. While it is true that the Court will not affirm the ALJ for a reason not offered by the ALJ, the Court notes that the ALJ can provide specific and legitimate reasons to discount a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, it is clear from the ALJ's decision that the ALJ relied on these factors that he discussed when evaluating the overall record and making the determinations questioned herein. Therefore, these factors will be discussed herein.

   c. Plaintiff failed to make a good effort on medical test within her control

These finding relate largely to Dr. Mayers' test results and opinions, *see infra*, section 2f. A number of test results from Dr. Mayers suggest that plaintiff gave "less than optimal effort" (*see, e.g.*, Tr. 426). Although the test results will be discussed below, *see*

*infra* section 2f, the Court notes that the ALJ's finding that plaintiff did not provide accurate information about her abilities and did not put forth a good effort on testing is based on substantial evidence in the record as a whole. It also supports in part the ALJ's rejection of opinions from some of plaintiff's doctors, as well as the ALJ's finding that plaintiff did not suffer from any mental impairments other than alcohol dependence disorder.

### d. Activities of daily living

The ALJ indicated that he credited the opinion of Dr. Thomas Clifford, Ph.D. over the opinions of other doctors (*see* Tr. 15-16). The ALJ found that Dr. Clifford's opinion was the most consistent with the overall record, including plaintiff's activities of daily living (*see* Tr. 16). The ALJ noted the following:

> [Plaintiff] describes herself as an avid reader. She goes to the library 3 times per week. She uses public transportation. She has been able to develop and maintain several intimate relationships, regardless of whether they ended poorly. She cares for a dog. She watches movies. She can wash her clothes, clean her home, and cook. She can take care of family members and work outside in her yard. (Internal citation to Exhibits 2D, 3D, 5E, 7E, 24F). These activities are only the ones that she had been willing to admit to. Her lack of credibility suggests that she may be able to do even more. She is able to handle daily needs interact with others socially, concentrate, do activities, venture out in public, attend appointment, plan, organize her time, adapt to changes, made decisions, and so forth. Indeed, as discussed, she denied any mental difficulties when she first applied for benefits in 2007.

(Tr. 16).

The Court concludes that the ALJ's discussion of plaintiff's activities of daily living is supported by substantial evidence in the record as a whole. The Court also

concludes that it provides some limited amount of support for the ALJ's reconciliation of the conflicts in the medical opinion evidence.

Furthermore, the ALJ's implied inference that plaintiff's provision of inconsistent information about her alcohol use, although known to her doctors, also suggested that plaintiff provided other inconsistent information that was relied on by the doctors is a logical inference based on the evidence in the record.

> **2. Plaintiff's inconsistent statements and other reasons offered by the ALJ are specific and legitimate reasons justifying his rejection of medical opinions and his findings of no severe depression or anxiety.**

    a. Dr. Terilee Wingate, Ph.D., examining doctor

Dr. Wingate examined plaintiff and conducted a mental status examination (*see* Tr. 214-22). Dr. Wingate noted plaintiff's symptoms and opined, for example, that plaintiff's depressed mood was marked (*see* Tr. 215). However, Dr. Wingate indicated the basis for this opinion as "sad, [down arrow] sleep, low energy, [down arrow] appetite" (*see id.*). It is clear that at least some of this basis derives from plaintiff's subjective report, as that is the logical source of the information regarding plaintiff's energy level, sleep and appetite (*see id.*). That Dr. Wingate's diagnosis of depressive disorder is based largely on plaintiff's self-reported symptoms, which all are listed on the diagnostic assessment page of Dr. Wingate's report, is a logical inference supported by substantial evidence in the record (*see id.*).

Dr. Wingate also indicated multiple opinions regarding plaintiff's functional abilities, such as a marked limitation in her ability to learn new tasks and moderate

limitation in her abilities to perform routine tasks and understand, remember and follow complex (more than two step) instructions (*see* Tr. 216). Dr. Wingate indicated multiple bases for her functional opinions, including plaintiff's MSE results, such as that plaintiff "did a 3 step task" (*see id.*).

The ALJ's inference that Dr. Wingate relied on plaintiff's subjective reports is supported by the record because although Dr. Wingate noted that plaintiff completed the three-step task, Dr. Wingate opined moderate limitation in plaintiff's ability to understand, remember and follow complex (more than two step) instructions (*see* Tr. 216). This conclusion is buttressed by Dr. Wingate's explicit indication that her opinion regarding plaintiff's poor sustained attention is due to plaintiff's activities of daily living ("ADL's") (*see id*). It is unlikely that Dr. Wingate had the opportunity to observe ADLs of plaintiff herself. Similarly, it is a logical inference from the record that when opining that plaintiff suffered from some moderate social limitations, such as ability to interact appropriately in public contacts, Dr. Wingate relied on plaintiff's subjective report, as Dr. Wingate noted that plaintiff "has become socially withdrawn –she prefers to avoid contact [with] public" (*see id.*).

For the reasons stated and based on the relevant record, the Court concludes that Dr. Wingate's assessment and opinions were based in part on plaintiff's subjective reports therefore, the ALJ's reliance on plaintiff's inconsistent reports and credibility factors, as well as the other reasons offered, are specific and legitimate reasons for the ALJ's failure to credit fully all of Dr. Wingate's opinions.

  b.  Dr. Enid Griffin, Psy.D., examining doctor

1   Dr. Griffin examined plaintiff on December 29, 2008 (*see* Tr. 253-62). Dr. Griffin
2   diagnosed plaintiff with major depressive disorder, recurrent, moderate, but did not
3   indicated the basis for her diagnosis here (*see* Tr. 254). Dr. Griffin opined that plaintiff's
4   "alcohol use is increasing her depressive symptoms to a mild extent" (*see* Tr. 255). At the
5   end of her report, Dr. Griffin indicated that the symptoms that "meet the criteria for major
6   [depressive disorder] and alcohol abuse" can be found on page one of the report
7   addendum (*see* Tr. 259). Page one of the report addendum consists of plaintiff's self-
8   reports (*see* Tr. 260).
9
10  Dr. Griffin also provided her opinion regarding various specific functional
11  limitations of plaintiff, including cognitive and social factors (*see id.*). Dr. Griffin
12  explicitly indicated that her opinions were provided on the basis of "observations, self-
13  report and history" (*see id.*). It is clear from the record that the "self-report and history"
14  both derive largely from plaintiff. Although Dr. Griffin relied in part on her own
15  observations, it is unclear which observations were relied on by Dr. Griffin. Although Dr.
16  Griffin noted plaintiff's flat affect with some periods of anxiety, plaintiff's MSE results
17  indicate many "intact" results (*see* Tr. 258). For example, Dr. Griffin opined specifically
18  that memory impairment was absent (*see id.*).
19
20  Based on the relevant record, the Court concludes that the ALJ's finding that Dr.
21  Griffin relied on plaintiff's unreliable self-reports is supported by substantial evidence in
22  the record as a whole. The Court also concludes that this reason, along with the rest of the
23  ALJ's discussion, entails a specific and legitimate reason for the ALJ's failure to credit
24  fully Dr. Griffin's opinions.

The Court notes that defendant also directs the Court's attention to the fact that Dr. Griffin opined that plaintiff's limitations would be at the opined level of severity for a maximum of "9 months or longer" (*see* Tr. 256). Defendant persuasively deduces that even if the Court were to credit fully Dr. Griffin's opinion (alone), such a crediting would not necessarily result in a finding of disability, suggesting harmless error. However, the Court finds no error.

### c.  Dr. Janis L. Lewis, Ph.D., examining doctor

Although Dr. Lewis explicitly based some of her opinions on her own observations, she also based some of them on plaintiff's subjective reports. Therefore, substantial evidence supports the ALJ use of plaintiff's inconsistent reports for the failure to credit fully Dr. Lewis' opinions. For example, regarding cognitive factors, although Dr. Lewis opined that plaintiff suffered from mild limitations in her ability to understand, remember and follow simple instructions, Dr. Lewis indicated that she observed that plaintiff's behavior in this area was within normal limits, *i.e.*, "WNL today" (*see* Tr. 448). Similarly, although Dr. Lewis included the statement that she had not observed plaintiff carry out her activities of daily living, Dr. Lewis nevertheless opined that plaintiff suffered from moderate difficulties in her ability to perform routine tasks (*see id.*). Dr. Lewis' overall assessment and opinion was based in part on plaintiff's subjective reports, therefore the ALJ's reliance on plaintiff's inconsistent reports and credibility factors, as well as the other reasons offered, are specific and legitimate reasons for the ALJ's failure to credit fully all of Dr. Lewis' opinions.

d. Dr. Cynthia Collingwood, Ph.D., non-examining medical consultant

Dr. Collingwood reviewed plaintiff's record and evaluated plaintiff on December 29, 2009 (*see* Tr. 468). Dr. Collingwood did not examine plaintiff, but opined that plaintiff suffered from moderate limitations in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions (*see* Tr. 482). In other listed areas of functioning, Dr. Collingwood opined that plaintiff was not significantly limited (*see* Tr. 482-83).

Substantial evidence in the record supports the ALJ's finding that Dr. Collingwood based her opinion in part on plaintiff's self reported information. When providing her opinion, Dr. Collingwood noted that regarding activities of daily living ("ADLs"), plaintiff "states that she does not prepare meals, she does light house work, shops and tries to follow written and spoken instructions" (*see* Tr. 484). Regarding social factors, Dr. Collingwood, indicated that plaintiff "states that she lives with family, goes to the library, and has some problems getting along with others" (*see id.*). She also noted that plaintiff "states that she does not like crowds and feels out of place with her family" (*see id.*).

Although Dr. Collingwood indicated some reliance on objective MSE test results, she also indicated explicitly a reliance on plaintiff's subjective self-reports. For this reason, and based on the relevant record, the Court concludes that the ALJ's reliance on plaintiff's inconsistent reports and credibility factors, as well as the other reasons offered, are specific and legitimate reasons for the ALJ's failure to credit fully all of Dr. Collingwood's opinions.

1                  e.   Dr. Daniel M. Neims, Psy. D., examining doctor

2       Dr. Neims examined and evaluated plaintiff on June, 2010 (*see* Tr. 514-26). He diagnosed plaintiff with depressive disorder, not otherwise specified, moderate, among other diagnoses (*see* Tr. 517). Regarding plaintiff's global assessment of functioning ("GAF"), Dr. Neims indicated that it was based on plaintiff's MSE results, her activities of daily living ("ADL's") and her symptoms (*see id.*). When discussing the severity of plaintiff's symptoms, he indicated that plaintiff "notes amotivation, withdrawal, and avoidance behavior" and he also noted plaintiff's "poor sleep and extended alcohol dependence in 7 mo remission" (*see* Tr. 515). Both of these notations likely are from plaintiff's self-report of her symptoms.

      Dr. Neims opined that plaintiff suffered from moderately severe short term memory impairment, noting some of plaintiff's MSE results, but he indicated on his MSE notes that he was unable to determine whether or not there was evidence of short-term memory impairment without testing or ancillary information (*see* Tr. 524). Regarding long term memory impairment, Dr. Neims opined that evidence of such memory impairment was absent (*see id.*).

      Dr. Neims provided numerous specific opinions regarding plaintiff's functional limitations in her ability to perform on a normal day-to-day work basis (*see* Tr. 518). Regarding the basis for his opinions, Dr. Neims indicated "please see attached addendum" (*see id.*). Dr. Neims' two-page addendum includes a narrative regarding plaintiff's history and subjective statement from plaintiff regarding her symptoms (*see* Tr. 521-22).

It is clear from a review of the relevant record that Dr. Neims relied at least in part on plaintiff's subjective reports when providing his opinions regarding plaintiff's ability to work. For this reason, and based on the relevant record, the Court concludes that the ALJ's finding that plaintiff provided inconsistent reports to her doctors, as well as other findings by the ALJ, consisted of specific and legitimate reasons supported by substantial evidence in the record as a whole for the failure to credit fully opinions of Dr. Neims.

f. Dr. Kathleen S. Mayers, Ph.D., examining doctor

Dr. Mayers examined and evaluated plaintiff on August 10, 2009 (*see* Tr. 422-28). She included many subjective notations from plaintiff in her report (*see id.*). For example, she noted that plaintiff "stated that she is not exactly depressed, but she feels down because she feels so poorly and she sleeps so poorly" (*see* Tr. 424). Dr. Mayers noted that plaintiff "sometimes tended to pause for a lengthy time before responding, especially during administration of the TOMM" (*see id.*).

Dr. Mayers also conducted a MSE and numerous psychological tests (*see* Tr. 424-26). For example, regarding the TOMM ("Test of Memory Malingering"), Dr. Mayers indicated that "[t]his test result is highly unusual and suggests a less than adequate effort" (*see* Tr. 426). Dr. Mayers also indicated as follows:

> Reyes test results indicated that she recalled only 12 of the 15 figures and she modified the order in a variety of ways (e.g., she drew 1 3 2 in one row, although 1 2 33 (the more obvious choice) was correct. This test result is also suggestive of a less than optimal effort.

(*id.*).

Regarding the SIMS test ("Structured Inventory of Malingered Symptomatology"), Dr. Mayers indicated as follows:

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18

1
2
3
4
5
6

>On the SIMS, she obtained a total score of 18 (which exceeds the cutoff of 14). Her values were as follows: NI: 7 (exceeding the cutoff of 2) and AM (exceeding the cutoff of 2). (sic) Other values were below the cutoff values. The NI test items assess the degree to which a respondent endorses highly atypical neurological symptoms. The AM items assess the degree to which a respondent endorses symptoms of memory impairment that are not consistent with patterns seen in individuals with brain dysfunction or injury. The total SIMS value provides an overall estimate of the likelihood that the respondent is describing highly unusual and possibly inaccurate psychiatric or cognitive symptoms.

7 (*id.*).

8
9
10
11
12

Dr. Mayers indicated that on the basis of these test results that she was "not able to state that [plaintiff] made a good effort on testing" (*see id.*). Dr. Mayers' Axis I diagnoses (where one would find a diagnosis of depression) include alcohol dependence, by history; amphetamine dependence; and cocaine dependence (*see* Tr. 426). She does not appear to have diagnosed depression or anxiety disorder (*see id.*).

13
14
15
16
17
18
19

The ALJ discussed plaintiff's potential poor effort on test results within her control when discussing the opinion of Dr. Mayers. For this reason, the inconsistent statements provided to her doctors, and for the other reasons provided by the ALJ in his written decision, the Court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record as a whole for his failure to credit Dr. Mayers opinions regarding limitations resulting from mental impairments.

20
21
22

For the reasons discussed, the Court concludes that the ALJ provided specific and legitimate reasons for the failure to credit fully the opinions of plaintiff's doctors about her mental health impairments and limitations. Plaintiff does not challenge specifically

23
24

the ALJ's evaluation of her credibility and testimony and the Court concludes that the ALJ's reasoning was clear and convincing regarding such findings.

Therefore, the Court concludes that the ALJ's findings regarding plaintiff's lack of severe depression and anxiety-related impairments are supported by substantial evidence in the record as a whole and without legal error.

CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 30, 2013, as noted in the caption.

Dated this 5th day of August, 2013.

J. Richard Creatura
United States Magistrate Judge